Pearson, J.
 

 The bill and cross bill are filed to obtain, a construction of certain clauses in the will of John Kelly, and for an account. 1st. (Item 16th,) “I give and bequeath to my dear wife absolutely, all the corn, fodder, meat, and
 
 other provisions
 
 on hand at my death.” At the death of the testator, there was a small quantity of wine and brandy in his cellar: he was not a dealer in wine and spirituous liquors. The wine and brandy had been ‘
 
 laid in”
 
 and
 
 ‘provided”
 
 for use, and clearly belonged to the widow under the word
 
 “provisions.” 2 Williams on Executors
 
 753.
 

 2nd. The testator gives
 
 to his
 
 wife, the slaves Billy and Libby, during her life, and at her death the slaves are given to the executor, Mr. Evans, “in trust for the use and benefit of Benjamin Rush.” The executor assented to the legacy and delivered the two slaves to Mrs. Kelly, to hold during her life. Bill afterwards died and Tibby was stricken with palsy ; she is old ; there is no longer hope of her recovery ; and she is now and will be for the rest of her life a charge. Mrs. Kelly is also dead. It is admitted to be against the interest of the legatee, Benjamin, who is an infant, to accept of the legacy. No other property is given to him.
 

 
 *365
 
 The support of Tibby is a charge upon the estate, which must be borne by the plaintiffs, who are entitled to the residue as next of kin. It was suggested that her support should be a charge uppn the legacy to John McGuire, under the words, “all other slaves not herein disposed of.” We do-not think these words embrace Tibby. She was disposed of. The legal title to her is now in the defendant, Evans, in trust for Rush, who declines accepting. It is therefore the duty of the executor and trustee, out of such part of the estate as remains in his hands undisposed of, to see that she is comfortably provided for, so as to prevent her from being chargeable to the County.
 

 3rd. The testator gives to his nephew, John R. McGuire, his gold watch and chain and seal absolutely. He gives several tracts of land to his wife for life, and at her death, to his executors, in trust for John R. McGuire, during his life, with remainder to his children : if he leaves no child, in trust for the children of Margaret Casey, &c..
 

 In the 3rd clause, he gives to his executors, certain lands, a number of slaves, bank stock, &c., *‘in trust, to receive the rents, issues, dividends and profits, until John R. McGuire arrives at the age of thirty-five years, and to apply the same to the comfortable support and maintenance of the said John R. McGuire and family, and upon his arrival at the age of thirty five years, if his habits are good and regular and he is attentive to business, then in further trust to
 
 convey the same
 
 to him absolutely. But in case his habits are bad, and he should be inattentive to business, then in trust to settle such property, so as to give the use and profits of the same to the said John R. McGuire for life, with remainder over to such child or children as he may leave living at his death. But if he leaves no child, then remainder over to the children of Margaret Casey,” &c.
 

 John R. McGuire died before he arrived at the- age of thirty-five years, leaving two infant children.
 

 
 *366
 
 The plaintiffs in the original bill, who are the next of kin of John Kelly, insist, that as McGuire died before he arrived at the age of thirty five years, the limitation over did not take effect, and the property, being thus left undisposed of, belongs to them.
 

 The executor of John R. McGuire, who is the plaintiff in the cross bill, insists, that the absolute estate vested in him, subject to be divested, if he arrived at the age of thirty five years and was then not of good habits, which event, being made impossible by his death, leaves the absolute property in his personal representatives. It is insisted for the infant children, that a life estate was given to their father, to be enlarged to an absolute estate, upon his arriving at the age of thirty-five, provided, he was of good habits, and otherwise to stand as a life estate, with a remainder to them : and as he died before arriving at that age, his estate was not enlarged, and the remainder took effect. It seems to us extremely clear, that the construction contended for in behalf of the children, is the true one: and does not need argument or authority to sustain it.
 

 The property was certainly disposed of; McGuire was to have a life estate, at all events, which was to become absolute, upon a contingency : and in the event it did not become absolute, there is a limitation over at his death to his children. So solicitous was the testator not to leave it undisposed of, that he makes a second limitation over, to the children of Mrs. Casey, if McGuire died without children. The fallacy of the very ingenious argument made for the next of kin consists, in assuming that the limitation over was made to depend upon the event of McGuire’s attaining the age of thirty-five and being then of bad habits ; whereas, the limitation over, was to take effect at his death and depended upon the event of his life estate not being enlarged to an absolute estale, in the manner provided for ; so that, his attaining the age
 
 *367
 
 of thirty-five and having certain habits, does not bear directly upon the limitation over,
 
 as being necessary to call it into existence :
 
 and could only affect it indirectly, by enlarging the first estate and absorbing the whole, thus leaving nothing to be limited over. The intention obviously is, that unless McGuire took the absolute estate, it should go 1o his children, or to the children of Mrs. Casey.
 

 It is equally clear, that McGuire did not take the absolute estate, subject to be defeated by a condition subsequent. He took an estate for life, subject to be enlarged by a condition precedent, which has not happened TI e will expressly provides, that the executor
 
 shall convey to him
 
 the absolute estate upon a contingency: this is not consistent with the idea that he had it before. The provisions made for the favorite of the testator, are of thrre kinds. The watch, &c., he takes absolutely, certain land he takes for life, with remainder to his children. The property, contained in the clause now under consideration, he takes for life, with remainder to his children, but
 
 with a chance
 
 that he may take absolutely.
 

 We have examined the cases, cited in the argument, and see nothing in them to support the idea, that in this case the absolute estate, as distinguished from a life estate, vested in the first taker, subject to be defeated by a contingency. The cases carry the doctrine of allowing the estate of the first taker to be a
 
 vested
 
 one to a great extent,
 
 in order to give the profits to the first taker
 
 and thus prevenían accumulation, and make some provision for him, until it be ascertained whether the contingency will happen or not. Here, then, is an express provision, that the first taker shall have the profits, and it is admitted that his estate is a vested one, (but is it vested absolutely, or for life only, is the question
 
 l)
 
 So the cases cited are not in point. And the fact, that such provision is made, furnishes an argument against the position, that the cs
 
 *368
 
 tate vested in the first taker was ail absolute one, for if so, why make the provision
 
 1
 

 There must be a reference to state the account. And it must be declared to be the opinion of this Court, that the wine and brandy.belonged to Mrs. Kelly, and the defendant, Evans, is not to account for it : that the slave Tibby is a proper charge upon the fund remaining in the hands of the executor undisposed of: and that the “land, slaves, bank stock,” &c., contained in the 3rd clause of the will, belong to the two infant children of John R. McGuire.
 

 Per Curiam.
 

 Decree accordingly.